UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * * *

LUXEYARD, INC.,

    Plaintiff,

    v.

KAY HOLDINGS, INC.; SANO HOLDINGS, INC.; and ROBERT WHEAT,

    Defendants.

3:15-cv-0357-LRH-WGC

<u>ORDER</u>

Before the court is defendants Kay Holdings, Inc. and Sano Holdings, Inc.'s (collectively "corporate defendants") motion to dismiss plaintiff LuxeYard, Inc.'s second amended complaint (ECF No. 51[1]). ECF No. 53. LuxeYard filed a response (ECF No. 60), to which corporate defendants replied (ECF No. 71).

Also before the court is defendant Robert Wheat's motion to dismiss for lack of personal jurisdiction. ECF No. 52. LuxeYard has failed to respond.

As described below, LuxeYard has instead moved to amend its second amended complaint in order to add jurisdictional allegations. ECF No. 73. Defendants filed a response (ECF No. 75) and LuxeYard replied (ECF No. 76). LuxeYard also separately moved for the court to hold a hearing regarding the motion to amend. ECF No. 77. Defendants did not reply.

---

[1]  This citation refers to the court's docket number.

# I.    Background

## A.    Factual background

This case involves the reverse merger of LuxeYard and an alleged related pump-and-dump scheme. LuxeYard first started its existence as LY Retail, an online business founded and privately owned by non-parties Amir Mireskandari and Khaled Alattar. ECF No. 51 at 3. During 2011, the two owners contacted non-party Kevin Casey to seek his help in raising capital in order to increase LY Retail's operations. Casey proposed a reverse merger, a process by which LY Retail would merge with an existing publically-traded "shell company." As a result, the merged publically-traded corporation—comprised of LY Retail's operations—would be able to issue stock in order to raise capital. This process was proposed as a means of saving the time and expense of, absent the merger, registering LY Retail stock for the first time with the Securities and Exchange Commission ("SEC").

In proposing the merger, Casey allegedly represented that his goal was to help LY Retail increase its operations and become a premier web-based retailer for luxury products. *Id*. at 6, 9. He also allegedly represented that all shares of the merged corporation held by officers and investors would be "locked-up" and thus unable to be sold for eighteen months after the closing date.

Mireskandari and Alattar agreed to the proposal, and Casey assembled a group of investors to fund the purchase of Top Gear, a then-existing publically-traded corporation. *Id*. at 7. After the purchase, a merger between LY Retail and Top Gear was executed on November 8, 2011. *Id*. at 9. Subsequently, the newly-merged corporation changed its name to LuxeYard.

LuxeYard alleges that defendant Kay Holdings was one of the investors that Casey recruited to fund the pre-merger purchase of Top Gear. *Id*. at 7. Kay is incorporated in Nevada. *Id*. at 2. At all pertinent times, defendant Robert Wheat wholly-owned Kay (i.e., he was the corporation's sole shareholder, officer, and director).[2] ECF No. 73 at 2, 7–8. Kay also later

---

[2]   Wheat claims that he transferred all of his ownership interest in both Kay Holdings and Sano Holdings to a non-party entity in 2013. ECF No. 75 at 5. LuxeYard challenges this assertion. However, this alleged transfer occurred after the underlying events in this case and is therefore irrelevant.

1  purchased LuxeYard shares directly from LuxeYard through a subscription agreement dated

2  November 8, 2011. ECF No. 51 at 11.

3        LuxeYard's central contention in this suit is that Casey and the other investors he

4  recruited never intended to grow the company's operations, but instead participated in the

5  reverse merger as part of a pump-and-dump scheme. *Id*. at 5. Through these schemes, investors

6  artificially increase the price of a stock (the "pump") by raising the market demand for it through

7  coordinated purchases and misleading marketing campaigns. *Id*. at 4. Shortly afterwards, the

8  initial investors rapidly sell their shares at an inflated price (the "dump") in order to reap large

9  profits. The scheme results in a collapse of the company's stock price.

10        LuxeYard alleges that, as part of the pump, LuxeYard's investors engaged in a series of

11  "match orders" for the purpose of creating a false impression that there was market demand for

12  the company's stock. *Id*. at 13. A matched order is a stock sale in which the seller arranges for a

13  buyer to purchase a stock for a nominal price before the seller ever offers the stock for sale. *Id*. at

14  14. LuxeYard alleges that defendant Wheat, through the use of two non-party corporations he

15  controlled, purchased 66,000 LuxeYard shares in March 2012 from a non-party co-conspirator.

16  LuxeYard does not appear to allege that Kay participated in these match orders but does allege

17  that Kay did eventually sell its LuxeYard shares for a substantial profit as part of the alleged

18  dump. *Id*. at 15–16. It is not clear when these shares were sold.[3]

19        LuxeYard further alleges that several conspirators engaged in forgery in order to facilitate

20  these match orders. *Id*. at 10. Originally, all LuxeYard shares were designated as "restricted,"

21  meaning they could not be sold or transferred, and bore a "restricted legend" that indicated this

22  fact. However, LuxeYard claims that "transfer agents" associated with the alleged conspirators

23  "were able to have the 'restricted' legend removed, by falsely claiming that the shares satisfied

24  SEC Rule 144, enabling the shares to be unrestricted. These newly minted 'unrestricted' shares

25  were divided among the defendants and their co-conspirators. Some of these shares were hidden

26

27  [3]  Kay claims that, contrary to LuxeYard's allegation, it never sold its LuxeYard stock. ECF No.

28  53-1 at 6. However, in addressing a motion to dismiss under FRCP 12(b)(6), the court accepts
    the facts alleged in the complaint as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

3

in nominal accounts or hidden under the names of different corporations in the United States and overseas." *Id.* at 13 n.4. LuxeYard claims that defendant Sano Holdings, which is a Nevada corporation also allegedly wholly-owned by Wheat (ECF No. 73 at 2), was one of the companies used to hide these shares. ECF No. 51 at 13 n.4. Sano allegedly acquired these shares directly from Casey, but, in order "[t]o mask the transaction, a Stock Purchase Agreement was falsified to make it appear that Sano Holdings had purchased these shares directly from one of the" original Top Gear shareholders rather than from Casey. *Id.*

As part of the pump, LuxeYard also alleges that, during April 2012, the conspirators spent $1.5 million to distribute circulars that contained false representations about LuxeYard in order to make its stock appear more appealing. *Id.* at 14. "For example, the circular falsely claimed that LuxeYard had 'officially projected to reach the 1 million registered members tipping point just 6 months after its official launch.'" *Id.* at 14–15. However, LuxeYard had not made this projection.

Finally, LuxeYard alleges that, despite this marketing investment, the original investors, including the defendants, sold their LuxeYard shares in April, shortly after the marketing campaign had commenced. *Id.* at 8, 15. As a result, LuxeYard's stock price collapsed, resulting in a negative impression of LuxeYard in the investor community and the company's difficulty in raising capital. *Id.* at 15.

### B.    Procedural history

On July 9, 2015, LuxeYard filed the instant action against defendants for a violation of federal securities laws. ECF No. 1. On August 27, 2015, LuxeYard filed an amended complaint against defendants, alleging numerous causes of action, including (1) violation of Section 16(b) of the Securities Act, (2) common-law fraud, and (3) conspiracy to commit fraud. ECF No. 14.

Corporate defendants moved to dismiss the amended complaint under FRCP 12(b)(6), arguing that the Securities Act claim was barred by the statute of limitations and the fraud-based claims failed to meet the heightened pleading standard under FRCP 9(b). ECF No. 18. The court agreed with both arguments and dismissed the claims against the corporate defendants but granted LuxeYard leave to amend its complaint in regards to its fraud-based claims. In turn,

LuxeYard filed a second amended complaint on December 21, 2015. ECF No. 51. This complaint, the operative complaint in this action, alleged only two causes of action: (1) common-law fraud (as to Kay only) and (2) conspiracy to defraud (as to all three defendants). Corporate defendants again moved to dismiss, arguing that the second amended complaint still fails to satisfy the heightened pleading standard for fraud-based claims. ECF No. 53.

Defendant Wheat moved to dismiss for lack of personal jurisdiction under FRCP 12(b)(2). ECF No. 52. In response, LuxeYard moved for jurisdictional discovery regarding Wheat and for an extension of time to respond to his motion to dismiss. ECF No. 62. The court granted the motion and referred the matter to Magistrate Judge Cobb in order for him to determine the scope of jurisdictional discovery. ECF No. 66. The court further ordered that LuxeYard would have twenty days after completion of this discovery to file a response to Wheat's motion to dismiss.

Judge Cobb held a hearing on January 29, 2016, regarding jurisdictional discovery. He determined that, because LuxeYard had failed to include corporate veil-piercing/alter-ego allegations in its second amended complaint, it would not be allowed to conduct discovery on this matter. ECF No. 72. Judge Cobb attempted to expedite the jurisdictional discovery process by reaching a consensus between counsel as to numerous documents Wheat would produce prior to his deposition. ECF No. 72 at 2. He also ordered LuxeYard to complete its deposition of Wheat by March 04, 2016. The deposition, however, never took place.

At a discovery-status conference on March 08, 2016, plaintiff's counsel blamed this fact on a scheduling conflict and discovery disputes with defense counsel. ECF No. 78. Judge Cobb determined that plaintiff's counsel did not sufficiently comply with the meet-and-confer obligations under Local Rule 26-7 and that he failed to avail himself of the opportunity to conduct jurisdictional discovery.

Despite the close of jurisdictional discovery, LuxeYard has not, to this date, filed a response to Wheat's motion to dismiss for lack of personal jurisdiction. It instead moved for leave to file an amended complaint in order to add jurisdictional allegations regarding its alter-

ego theory. ECF No. 73. In its response to an Order to Show Cause issued by Judge Cobb,[4] LuxeYard explained that it moved to amend "[i]n lieu of filing a response to Defendant Wheat's Motion to Dismiss . . . in order to show that Mr. Wheat is the alter ego of Defendant Kay Holdings and/or Defendant Sano Holdings . . . so that necessary [jurisdictional] discovery could be taken and to adhere to [Judge Cobb's] ruling that alter ego discovery could not be taken because the complaint was devoid of any 'corporate veil piercing' allegations . . . ." ECF No. 81 at 4. However, in his eventual order, Judge Cobb expressed concern that LuxeYard had moved to amend its complaint rather than complying with this court's order to file a response to Wheat's motion to dismiss within twenty days of the close of jurisdictional discovery. ECF No. 82 (citing ECF No. 66).

## II.   Analysis

### A.   Corporate defendants' motion to dismiss for failure to state a claim

#### 1.   Legal standard

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice-pleading standard. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The 8(a)(2) pleading standard does not require detailed factual allegations, but a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To satisfy the plausibility standard, 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's "judicial

---

[4]   Judge Cobb issued an order for plaintiff's counsel to show cause as to why counsel's *pro hac vice* status should not be revoked after counsel failed to appear for a June 23, 2016 status conference. ECF No. 79. After counsel filed a response attributing the non-appearance to a clerical error, Judge Cobb decided to take no action. ECF No. 82.

experience and common sense," that the defendant is liable for the misconduct alleged. *See id*. at 678–79. The plausibility standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 678 (internal quotation marks omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id*. The "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (brackets in original) (internal quotation marks omitted) (citing *Iqbal*, 556 U.S. at 681). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id*. (citing *Iqbal*, 556 U.S. at 681). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

### 2.    Fraud claim against Kay

In its response to corporate defendants' motion to dismiss, LuxeYard clarifies that it is alleging fraud in the inducement. ECF No. 60 at 3. To establish this claim, a plaintiff must prove each of the following elements by clear-and-convincing evidence: "(1) a false representation made by [the defendant], (2)[the defendant's] knowledge or belief that the representation is false (or knowledge that [the defendant] had an insufficient basis for making the representation), (3) [the defendant's] intention to therewith induce [the plaintiff] to consent to the contract's formation, (4) [the plaintiff's] justifiable reliance upon the misrepresentation, and (5) damage to [the plaintiff] resulting from such reliance." *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004) (footnotes omitted). "Fraud is never presumed; it must be clearly and satisfactorily proved." *Havas v. Alger*, 461 P.2d 857, 860 (Nev. 1969).

7

Here, LuxeYard alleges that Kay made misrepresentations to LuxeYard that induced LuxeYard into entering into the 2011 subscription agreement for the sale of its shares to Kay. The only misrepresentations that LuxeYard alleges that Kay made were representations made in three subsections of the "warranties and representations" portion of the written agreement. ECF No. 60 at 3 n.1; ECF No. 51 at 11–12. These subsections represent that (1) Kay was acquiring the LuxeYard shares "for investment for its own account" and with "no present intention of selling or otherwise distributing" the shares; (2) Kay understood that the shares were "restricted securities"; and (3) Kay had not directly or indirectly "engaged in any transactions in the securities of" LuxeYard since the time Kay contacted LuxeYard regarding the investment. ECF No. 51 at 11–12. LuxeYard alleges that it relied on these representations when it entered into the subscription agreement and that, because Kay bought the shares with the intent of participating in the pump-and-dump scheme, they were false.

Kay counters that a tort, such as fraudulent inducement, must arise from a defendant's violation of a duty imposed by law rather than a breach of contract. ECF No. 53-1 at 5. It further argues that, because LuxeYard has not alleged that Kay made representations extrinsic to the subscription agreement, the contract's warranties and representations cannot form the basis of a tort claim. This argument implicitly raises the economic-loss doctrine.

This "doctrine is a rule of judicial creation that, broadly speaking, marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby generally encourages citizens to avoid causing physical harm to others." *Davis v. Beling*, 278 P.3d 501, 514 (Nev. 2012) (internal quotation marks and brackets omitted). "Consistent with this purpose, the doctrine primarily functions to bar the recovery of purely monetary losses in certain products liability and *unintentional* tort actions." *Id.* (emphasis added). However, "[i]ntentional torts are not barred by the economic loss doctrine." *Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1154 n.2 (Nev. 2013) (citing *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 85–86 (Nev. 2009)). As such, the Nevada Supreme Court has found that the doctrine does not bar claims of intentional misrepresentation, a tort very similar to fraudulent inducement. *Id.*

1    This case, however, poses the question of whether the misrepresentations that underlie a

2  fraudulent-inducement claim must be extrinsic to the contract or whether they may be part of the

3  representations made in the contract itself. The parties have not identified any Nevada authorities

4  addressing this issue, nor has the court discovered any. However, the Ninth Circuit's analysis of

5  the economic-loss doctrine under Nevada law is instructive. *See Giles v. Gen. Motors*

6  *Acceptance Corp.*, 494 F.3d 865, 880 (9th Cir. 2007).

7    In *Giles*, the court correctly predicted that Nevada law would not bar a fraud claim

8  related to contract formation.[5] *Id.* at 872, 880. The court concluded that the plaintiffs' claim,

9  which addressed statements made by the defendant prior to contract formation, was a fraudulent-

10  inducement claim. *Id.* at 880. It stated that, "[u]nlike a fraud claim that duplicates a contract

11  claim by alleging misrepresentation about the characteristics or quality of goods that are the

12  subject of the contract, [the plaintiffs'] fraud claim is what [other jurisdictions] would call fraud

13  'extraneous' to the contract." *Id.* (citing Wisconsin and Michigan cases). Analogizing to Nevada

14  precedent, the court determined that the defendant "had an independent 'duty imposed by law'

15  not to commit fraud, a duty not 'arising by virtue of the alleged express agreement between the

16  parties.'" *Id.* (quoting *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000), *overruled on*

17  *other grounds by Olson v. Richard*, 89 P.3d 31, 31–33 (Nev. 2004)). This analysis suggests that a

18  fraud claim based on representations made within the contract would, in contrast, relate only to a

19  duty arising out of the contract itself rather than an independent legal duty.

20    New York courts have thoroughly analyzed this topic and have long held that a fraud

21  claim related to contract formation must involve either "a legal duty separate from the duty to

22  perform under the contract" or a "fraudulent misrepresentation collateral or extraneous to the

23  contract . . . ." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir.

24  1996) (applying New York law). "To determine whether the fact is collateral to the contract,

25  [New York] courts look to 'whether the contract itself speaks to the issue.'" *IMG Fragrance*

26

27  ───────────────
    [5]   *Giles* pre-dates the above-cited Nevada Supreme Court cases that explicitly held that the

28  economic-loss doctrine does not bar intentional torts. The Court has subsequently cited the Ninth
    Circuit's analysis in *Giles* with approval. *See Davis v. Beling*, 278 P.3d 501, 514 (Nev. 2012).

*Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 410 (S.D.N.Y. 2009) (quoting *Great Earth Int'l Franchising Corp. v. Milks Dev.,* 311 F. Supp. 2d 419, 427 (S.D.N.Y. 2004)). At least one federal court applying New York law found that a fraud claim based only on a contract's "representations and warranties" was barred and could only be pled as a breach of contract. *Ritchie Capital Mgmt., LLC v. Coventry First LLC*, No. 07 CIV. 3494 (DLC), 2007 WL 2044656, at *7 (S.D.N.Y. July 17, 2007).

Based on the reasoning above, the court finds that LuxeYard may not base its fraudulent-inducement claim on alleged misrepresentations made only within the warranties and representations portion of its subscription agreement with Kay. Such a claim sounds in contract rather than tort.

LuxeYard has requested that, in the event the court reached this conclusion, its fraud claim should be construed as a breach-of-contract claim. The court declines to do so. LuxeYard's decision to fashion a fraudulent-inducement claim rather than a breach-of-contract claim is not a mere drafting error. As the economic-loss doctrine demonstrates, there is an important distinction between contract and tort claims, including the forms of relief available. Moreover, corporate defendants raised identical arguments in their first motion to dismiss. ECF No. 18-1 at 6. While other issues ultimately led the court to dismiss the last complaint, LuxeYard was on notice that there was a possible defect in its fraud claim but failed to address the issue in its second amended complaint.

Based on the foregoing, the court will dismiss LuxeYard's fraud claim against Kay (claim 1) with prejudice.

### 3.   Conspiracy-to-defraud claim against all defendants

LuxeYard also contends that the defendants' alleged involvement in the pump-and-dump scheme constitutes a conspiracy to defraud. Such a "claim exists when there is (1) a conspiracy agreement, i.e., a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff. Thus, an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud."

*Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 51 (Nev. 2005) *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008) (internal citations omitted). "To establish fraud, [the plaintiff] must show that [the defendant] provided a false representation of a material fact, which he knew to be false; that [the defendant] intended the [the plaintiff] to rely on the misrepresentation; that the [the plaintiff] detrimentally relied on the misrepresentation; and that the misrepresentation proximately caused damages." *Chen v. Nev. State Gaming Control Bd.*, 994 P.2d 1151, 1152 (Nev. 2000) (citing *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975)).

Corporate defendants' primary response is that the second amended complaint still fails to meet the heightened pleading standard for fraud-based claims under FRCP 9(b). In order to meet the heightened pleading standard, a plaintiff must specify the time, place, and content of the misrepresentation. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 n.10 (9th Cir. 1999). Allegations of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

"A claim for conspiracy to commit fraud must be pled with the same particularly as the fraud itself." *Goodwin v. Exec. Tr. Servs., LLC*, 680 F. Supp. 2d 1244, 1254 (D. Nev. 2010). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (internal quotation marks and brackets omitted). Further, "to state a claim for conspiracy 'a plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement. It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement.'" *Goodwin*, 680 F. Supp. 2d at 1254 (quoting *S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d 1010, 1020–21 (D. Ariz. 2001)).

LuxeYard argues that it has sufficiently pled that both corporate defendants committed acts of fraud in furtherance of the alleged conspiracy. ECF No. 60 at 6. In regards to Sano,

1  LuxeYard only highlights its allegation that the company "assisted in the process of having the
2  restricted legend on LuxeYard shares wrongfully removed so the shares could be sold and used
3  in the pump-and-dump scheme." *Id.* (citing ECF No. 51 at 13 n.4). LuxeYard does provide
4  specific details about Sano's role in allegedly altering and hiding the LuxeYard shares, including
5  the parties involved and the date of one of these transactions. However, corporate defendants
6  counter that a conspiracy-to-defraud claim requires "an overt act of fraud in furtherance of the
7  conspiracy," and LuxeYard's allegation fails to plead the elements of fraud. ECF No. 71 at 6.

8        The court agrees with this argument. While LuxeYard's allegations, if true, might
9  establish a violation of federal securities laws, they do not meet the elements of common-law
10 fraud. Namely, LuxeYard has failed to allege that Sano made any false representations that
11 LuxeYard relied on. LuxeYard has therefore failed to state a claim against Sano for conspiracy to
12 defraud.

13       Similarly, the only act of fraud that Kay allegedly committed is based on the
14 representations made in the subscription agreement. Because the court has already determined
15 that contract warranties and representations cannot form the basis of a fraudulent-inducement
16 claim, LuxeYard has also failed to allege an overt act of fraud that Kay committed in furtherance
17 of the conspiracy. It has therefore also failed to state a claim against Kay for conspiracy to
18 defraud.

19       Accordingly, the court will dismiss LuxeYard's conspiracy-to-defraud claim against Kay
20 and Sano (claim 2) with prejudice.

21            **4.     Sanctions**

22       At the end of their motion to dismiss, corporate defendants request that the court sanction
23 LuxeYard and award defendants attorney's fees. ECF No. 53-1. They argue that the second
24 amended complaint again failed to meet the heightened pleading and that LuxeYard therefore
25 "wasted" the court's and the defendants' time and resources. As an initial matter, corporate
26 defendants' motion is procedurally defective, as both FRCP 11(c) and Local Rule IC 2-2(b)
27 require that they file the motion as a separate document. Additionally, the motion lacks merit.
28 While the court will dismiss LuxeYard's second amended complaint, there is no basis for

concluding that LuxeYard filed the complaint for any "improper purpose" or that its legal claims were unwarranted by existing law. *See* Fed. R. Civ. P. 11(b). Corporate defendants' request for sanctions and attorney's fees is therefore denied.

### B.  LuxeYard's motion for leave to file an amended complaint

The court will address LuxeYard's motion for leave to add jurisdictional allegations to its complaint before addressing defendant Wheat's motion to dismiss for lack of personal jurisdiction; resolution of the former will affect what facts the court considers in resolution of the latter. LuxeYard moves to amend its complaint in order to add allegations regarding its theory that Wheat is the "alter ego" of the corporate defendants in order to "pierce the corporate veil." LuxeYard argues that, because the court has personal jurisdiction over the corporate defendants, its alter-ego theory, if successful, would allow the court to also exercise jurisdiction over Wheat, even absent an independent basis for jurisdiction over him as an individual. *See Viega GmbH v. Eighth Jud. Dist. Ct.*, 328 P.3d 1152, 1157 (Nev. 2014).

FRCP 15(a) provides that a trial court shall grant leave to amend freely "when justice so requires." The Ninth Circuit frequently considers five factors in determining the propriety of a motion to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) whether plaintiff has previously amended his complaint; and (5) futility. *Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props., Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1160 (9th Cir. 1989)). Based on the analysis below, the court finds that LuxeYard's motion triggers several of these factors and will therefore be denied.

#### 1.  Bad faith

Wheat argues that LuxeYard has acted in bad faith because it has attempted to defy Judge Cobb's order barring alter-ego-related discovery due to a lack of alter-ego/veil-piercing allegations (ECF No. 73) by moving to amend to add such allegations. ECF No. 75 at 4. LuxeYard argues that it filed this motion in an attempt to comply with the order because it believed that amending its complaint was the only way to undertake its desired discovery. ECF No. 76 at 10.

The court finds that LuxeYard did act in bad faith by ignoring this court's earlier order requiring LuxeYard to respond to Wheat's 12(b)(2) motion to dismiss within twenty days after the close of jurisdictional discovery. LuxeYard instead moved to amend in lieu of filing a response without seeking leave from the court. While LuxeYard asserts that it sought to comply with Judge Cobb's discovery order, nothing in the order indicated that he would grant LuxeYard additional time to conduct alter-ego-related discovery if LuxeYard was granted leave to amend its complaint. In contrast, Judge Cobb found that LuxeYard failed to avail itself of the opportunity to conduct jurisdictional discovery (ECF No. 78) and also expressed concern that it filed the present motion instead of a response (ECF No. 82).[6]

### 2.    Prior amendments

LuxeYard has already filed three complaints in this action. Wheat points out that the amended complaint (ECF No. 14) included alter-ego allegations that LuxeYard subsequently omitted from its second amended complaint. ECF No. 74 at 4. LuxeYard counters that its earlier complaint alleged an alter-ego theory for purposes of Wheat's liability based on the corporate defendants' alleged actions rather than for establishing personal jurisdiction over Wheat. ECF No. 76 at 4.

This distinction has no merit in this context, as there is no reason to believe Judge Cobb would not have allowed for discovery regarding this theory if LuxeYard had retained its earlier allegations in its second amended complaint. After all, the court could not potentially find Wheat liable based on an alter-ego theory without first establishing that the court had personal jurisdiction over Wheat on the same basis. In turn, it was LuxeYard's own decision to remove these allegations that precluded it from engaging in such discovery. Allowing LuxeYard to amend its complaint for the third time in this action only for the purpose of correcting its own error is thus unwarranted.

///

///

---

[6]  Judge Cobb also expressly noted that LuxeYard's motion to compel may not be, in and of itself, a sufficient response to Wheat's motion to dismiss (ECF No. 82).

14

### 3.      Futility

Because LuxeYard did not avail itself of the opportunity to conduct jurisdictional discovery, the court will not grant it additional jurisdictional discovery. Its motion for leave to amend is thus futile, unless the allegations in its motion would provide a sufficient basis for piercing the corporate veil for at least one of the corporate defendants.

Under Nevada law, a plaintiff may establish that an individual is a corporation's alter ego and thus pierce the corporate veil by showing all of the following: "(1) [t]he corporation [is] influenced and governed by the person asserted to be its alter ego[;] (2) [t]here [is] such unity of interest and ownership that one is inseparable from the other; and (3) [t]he facts [are] such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice." *Lorenz v. Beltio, Ltd.*, 963 P.2d 488, 496 (Nev. 1998) (*quoting McCleary Cattle Co. v. Sewell*, 317 P.2d 957, 959 (Nev. 1957), *overruled on other grounds by Callie v. Bowling*, 160 P.3d 878 (Nev. 2007)); *see also* Nev. Rev. Stat. § 78.747(2) (codifying this test). The Nevada Supreme Court has admonished that "the corporate cloak is not lightly thrown aside." *Baer v. Amos J. Walker, Inc.*, 452 P.2d 916, 916 (Nev. 1969).

In satisfying the alter-ego test, it is insufficient to merely establish that an individual meets the first two requirements, control and unity of interest, which are commonly found "in small, closely held corporations involving a single or small group of stockholders, directors or officers." William H. Stoddard, Jr., <u>Making Sense of Nevada's Alter Ego Doctrine</u>, Nev. Law., Dec. 2012, at 7. A plaintiff attempting to pierce the corporate veil must additionally show "that the financial setup of the corporation is only a sham and caused an injustice." *N. Arlington Med. Bldg., Inc. v. Sanchez Const. Co.*, 471 P.2d 240, 244 (Nev. 1970) (finding the alter-ego test was not satisfied when a corporate president had control over a closely-held corporation and undercapitalized it because there was no "causal connection" between these factors and the corporation's inability to repay a promissory note); *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841 (Nev. 2000) (finding the alter-ego test satisfied when the defendant took advantage of corporate structures to avoid paying a judgment against him).

Here, LuxeYard alleges the following facts about Wheat and Kay, which it argues is sufficient, even absent additional discovery, to establish that the two are alter egos: (1) Wheat is the sole owner of Kay; (2) he invests in penny stocks through Kay and does not have a personal account for such investments; (3) Kay has no employees; (4) Kay's principal office is run out of Wheat's home; (5) Wheat is the only board member of Kay; (6) Wheat is the sole shareholder, officer, and director of Kay; and (7) Kay's telephone number is Wheat's cellphone number. ECF No. 73 at 7–10. These allegations, however, only speak to the first two factors of the alter-ego test: control and unity of interest. While LuxeYard alleges that Kay and Wheat engaged in a conspiracy to defraud LuxeYard, it does not allege any facts in its complaint or its motion that demonstrate that Wheat's relationship to Kay itself resulted in an alleged injustice. Because the facts that LuxeYard currently alleges are insufficient to satisfy the alter-ego test and because no additional jurisdictional discovery will be granted, allowing LuxeYard to amend its complaint would be futile.

Based on all of the analysis above, the court will deny LuxeYard's motion for leave to amend its complaint to add jurisdictional allegations. The court will thus also deny its motion for a hearing on this matter.

## C.     Wheat's motion to dismiss for lack of personal jurisdiction

Finally, the court addresses Wheat's motion to dismiss. Because the court has declined to allow LuxeYard to amend its complaint in order to pursue an alter-ego theory, this analysis is based only on Wheat's ties to Nevada as an individual.

A court may dismiss a complaint for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). Where a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden of demonstrating the court has jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). A plaintiff makes a prima facie showing of personal jurisdiction by introducing competent evidence of essential facts that support jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Where the court receives only written materials, the plaintiff need only make a prima facie showing through its pleadings and affidavits that the exercise of

personal jurisdiction over the defendant is proper. *Schwarzenegger*, 374 F.3d at 800. Although a plaintiff cannot simply rest on the bare allegations of its complaint, the uncontroverted allegations in the plaintiff's complaint are taken as true, and conflicts between the facts contained in the parties' affidavits are resolved in the plaintiff's favor. *Id.*

In order to establish personal jurisdiction, the plaintiff must show that the forum's long-arm statute confers personal jurisdiction over the out-of-state defendants and that the exercise of jurisdiction does not violate federal constitutional principles of due process. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd*., 784 F.2d 1392, 1396 (9th Cir. 1986). Nevada's long-arm statute permits the exercise of jurisdiction on any basis consistent with federal due process. Nev. Rev. Stat. § 14.065(1). Federal due process requires that a defendant "have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted).

Personal jurisdiction over a nonresident defendant may be either general or specific. *Helicopteros Nationales de Columbia S.A. v. Hall*, 466 U.S. 408, 414 (1984). A court may exercise general jurisdiction over a defendant if the defendant's activities in the forum are either "substantial" or "continuous and systematic" such that the defendant's activities approach a "physical presence" in the forum, even if those contacts did not give rise to the action. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

In contrast, for a court to exercise specific jurisdiction, the action must arise out of the defendant's forum-related activities such that he can reasonably anticipate being haled into court. *Bancroft*, 223 F.3d at 1086. Specific jurisdiction is determined by analyzing the "quality and nature of the defendant's contacts with the forum state in relation to the cause of action." *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). The Ninth Circuit uses a three-part test for personal jurisdiction: (1) the defendant must purposefully direct his activities to the forum state or purposefully avail himself of the privilege of conducting activities in the forum state; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *See Bancroft*, 223 F.3d at 1086; *Schwarzenegger*, 374 F.3d at 802.

17

Here, Wheat avers that he is a California resident and has never resided in Nevada. ECF No. 52-1 at 2. He further avers that he does not derive income from Nevada, does not maintain an office in the state, does not have a bank account in the state, and does not own any real property in the state. Wheat also asserts that "[a]ll transactions related to the purchase and sale of LuxeYard stock by Defendants took place in California" and "[n]o part of Plaintiff's allegations took place in Nevada." *Id*. at 3. He also correctly highlights that the only references to Nevada in the second amended complaint are (1) that Kay and Sano are incorporated in Nevada and (2) the allegation that "events giving rise to LuxeYard's claims against the Defendants occurred in part in Nevada." *See* ECF No. 51 at 2. This type of vague allegation cannot satisfy a prima facie showing that personal jurisdiction over Wheat is proper. Because the jurisdictional facts alleged by Wheat are not contradicted by the second amended complaint and LuxeYard has failed to respond to his motion to dismiss, the court finds that it lacks personal jurisdiction over Wheat. His motion to dismiss will therefore be granted.

**III.    Conclusion**

IT IS THEREFORE ORDERED that Kay and Sano's motion to dismiss LuxeYard's second amended complaint (ECF No. 53) is GRANTED.

IT IS FURTHER ORDERED that Kay and Sano are DISMISSED from this action with prejudice.

IT IS FURTHER ORDERED that LuxeYard's motion for leave to amend its second amended complaint to add jurisdictional allegations (ECF No. 73) is DENIED.

IT IS FURTHER ORDERED that LuxeYard's motion for an oral hearing on its motion for leave to amend (ECF No. 77) is DENIED.

IT IS FURTHER ORDERED that Robert Wheat's motion to dismiss for lack of personal jurisdiction (ECF No. 52) is GRANTED.

///

///

///

///

IT IS FURTHER ORDERED that Robert Wheat is DISMISSED from this action.

IT IS SO ORDERED.

DATED this 15th day of September, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE